THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

SHORELIGHT EDUCATION, LLC
Two Seaport Lane, Suite 500
Boston, MA 02210

      *Plaintiff*,

UNITED STATES
DEPARTMENT OF STATE
2201 C St. NW
Washington, D.C. 20520

      *Defendant*.

Case No.

**COMPLAINT**

1. Plaintiff Shorelight Education, LLC ("Shorelight") brings this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), against Defendant, U.S. Department of State ("DOS") to compel Defendant to produce documents and data in compliance with FOIA.

2. On August 28, 2018, Plaintiff submitted a FOIA request to DOS requesting F-1 student visa non-immigrant refusal statistics by post and nationality for Fiscal Years 2015 through 2018.

3. This data is a topic of significant public importance that has raised substantial questions about whether the United States is currently refusing a significantly higher percentage of student visa applications in certain countries than in past years.[1]

---

[1] *See e.g.* Noah Smith, *Trump's Student Visa Clampdown Hurts the Rust Belt*, Bloomberg Opinion, Sept. 18, 2018, https://www.bloomberg.com/view/articles/2018-09-18/trump-s-student-visa-clampdown-hurts-the-rust-belt; Parija Kavilanz, *Sharp Drop in International Students Worries Some U.S. Colleges*, CNN Money, Mar. 14, 2018;  Laura Meckler & Melissa Korn, *Visas Issued*

4. The request was entitled to expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(I). *See also* 22 C.F.R. § 171.11(f)(2) and (3).

5. DOS unlawfully denied Shorelight's right to expedited processing of its FOIA request. Plaintiff therefore respectfully requests that the Court compel DOS to process the request on an expedited basis.

6. Defendant has further failed to respond sufficiently to Plaintiff's request. Plaintiff therefore respectfully requests that the Court compel DOS to comply with FOIA and produce the statistics that are already in DOS's possession and are readily available to be released with very little effort or resource expenditure on DOS's part.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

9. Plaintiff Shorelight Education, LLC is a limited liability corporation incorporated under the laws of Delaware and based in Boston, Massachusetts. Shorelight currently works with seventeen well-known U.S. universities—Adelphi University, American University, Auburn University, Auburn University at Montgomery, Florida International University, Louisiana State University, Mercer University, University of Massachusetts at Boston, University of Massachusetts Amherst, University of Central Florida, University of Dayton,

---

*to Foreign Students Fall, Partly Due to Trump Immigration Policy*, Wall Street Journal, Mar. 11, 2018, https://www.wsj.com/articles/visas-issued-to-foreign-students-fall-partly-due-to-trump-immigration-policy-1520766000.

University of Illinois at Chicago, University of Kansas, University of Mississippi, University of the Pacific, and University of Utah—to provide innovative options for foreign students seeking next generation higher education.

10. Among the services Shorelight Education provides to its universities is face-to-face student concierge services, enrollment expertise, localized marketing, and—most importantly for this case—regulatory information guidance. *See https://shorelight.com/universities/*. A primary purpose of Shorelight's operations is disseminating information about the Federal Government's activities with regard to the foreign student visa program in order to inform members of Congress, members of the media, the current universities with which it works, potential future university collaborators, potential students, and the general public at large about government policies and practices affecting international students and U.S. universities.

11. Moreover, Shorelight has a substantial due process interest in obtaining this data. Shorelight and its associated universities need to understand the changing landscape of the international student visa adjudication process in order to make multi-million dollar decisions about which international students to invest-in and recruit from around the world. This data is critical to preventing public schools funded by taxpayer dollars from wasting millions of dollars in the recruitment of students from areas where they are unlikely to obtain visas.

12. Defendant, the State Department, is a federal agency within the meaning of the FOIA, see 5 U.S.C. § 552(f)(1), that is headquartered in Washington, D.C. Defendant has possession, custody, and control of the records and data to which Plaintiff seeks access.

**STATEMENT OF FACTS**

13. Generally, a citizen of a foreign country who wishes to enter the United States to

study must first obtain a student visa in order to legally study in the United States. A student seeking to study at a college, university, or a language training program must obtain what is known as an "F-1" visa, which is named after the section of the Immigration and Nationality Act authorizing the issuance of student visas. *See* 8 U.S.C. § 1101(a)(15)(F)(i).

14. In order for a foreign student to obtain a visa to study in the United States, they must apply to, and be accepted by, a school approved by the Department of Homeland Security to accept foreign students. After the DHS-approved school accepts the student's enrollment, the school issues the student a Form I-20. *See* Department of State Student Visa Website, https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html (last visited October 1, 2018).

15. After the student receives a Form I-20, the student may then apply at a U.S. Embassy or Consulate for an F-1 student visa. At that interview, a consular officer interviews the student to determine whether the student should be granted a visa to study in the United States.

16. Each month, the State Department already reports the sum-total number of F-1 student visas "issued" by post and nationality as a result of these interviews. *See* Department of State, Monthly Nonimmigrant Visa Issuances Statistics, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/nonimmigrant-visa-statistics/monthly-nonimmigrant-visa-issuances.html (last visited October 1, 2018).

17. Moreover, each year, the State Department also already reports the worldwide sum-total number of F-1 student visas "issued" and "refused." *See* Department of State, Worldwide NIV Workload by Visa Category FY 2017, https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVWorkload/FY2017NIVWorkloadbyVisaCategory.pdf (last visited October 1,

2018).

18.     Despite issuing the two sets of data/statistics described above, the State Department does not publicly report the disaggregated "refused" data contained within the yearly document so that it can provide, and make publicly available, **by post and nationality**, the total number of F-1 student visas that were "refused" each month.

19.     That is why, on August 28, 2018, Shorelight requested F-1 student visa non-immigrant refusal statistics by post and nationality for Fiscal Years 2015 through 2018.

20.     Shorelight has requested this data because, based on the scope of its global operations and its firsthand knowledge of the student visa adjudication process, Shorelight has reason to believe that the visa refusal rate for F-1 student visas is significantly increasing in certain countries and at certain times of the year in comparison to other countries and other times of the year.

21.     This request is not a remarkable, onerous, or resource-intensive request for the State Department to fulfill.  Each year, the State Department publicly releases a document that is titled: "ADJUSTED REFUSAL RATE - B-VISAS ONLY BY NATIONALITY," which provides the exact same non-immigrant visa refusal rate for *visitor's visas* by nationality. *See* State Department, Adjusted Refusal Rate- B-Visas Only By Nationality, Fiscal Year 2017, *https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant Statistics/RefusalRates/FY17.pdf* (last visited October 1, 2018).

22.     Keeping the statistics for visitor's visas is far more voluminous, time-consuming, and resource intensive than for student visas—as there are at least 1,400% to 1,500% more visitor's visas sought and issued each year than student visas.  *See* Department of State, Worldwide    NIV    Workload    by    Visa    Category    FY    2017, https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-

Statistics/NIVWorkload/FY2017NIVWorkloadbyVisaCategory.pdf (last visited October 1, 2018).

23. Finally, to be clear, Shorelight is only requesting data that is already in Defendant's immediate possession, and that simply disaggregates the numbers already contained and publicly reported in the "refused" column of the yearly statistics so that those numbers can be publicly available by post and nationality.  Shorelight effectively seeks the exact same statistics, in the exact same format, already reported for B-1 visitor's visas, but for F-1 student visas instead.  This information is necessarily readily and easily available as there is no way DOS can report the monthly and yearly statistics without keeping these statistics available.  Moreover, Consular officials have told Shorelight employees that this data is kept and is available to Consular officials at each U.S. Embassy and Consulate.

*The FOIA Request*

24. On August 28, 2018 Plaintiff submitted a request via fax and Federal Express seeking F-1 non-immigrant visa refusal statistics by post and nationality for FY2015-2018. *See* Exhibit A, FOIA Request to State Department.

*Entitlement to Expedited Processing*

25. Shorelight sought expedited processing of the DOS FOIA request pursuant to 5 U.S.C § 552(a)(6)(E)(i)(I), as implemented by 22 C.F.R. § 171.11(f)(2) and (3).

26. Expedited processing shall be provided "in cases in which the person requesting the records demonstrates a compelling need . . . ." 5 U.S.C. § 552(a)(6)(E)(i)(I). "Compelling need" means requests "made by a person primarily engaged in disseminating information" with an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

27. Shorelight's State Department FOIA requests are "made by a person primarily engaged in disseminating information," and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5. U.S.C. § 552(a)(6)(E)(v)(II); *see also* 22 C.F.R. § 171.11(f)(2) and (3).

28. In addition, failure to release the information would impair substantial due process rights or harm substantial humanitarian interests. *See* 22 C.F.R. § 171.11(f)(3). Shorelight has a substantial due process interest in obtaining this data because it and its associated universities need to understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest-in and recruit from around the world. This data is critical to preventing public schools funded by taxpayer dollars from wasting millions of dollars to recruit students from areas where they are unlikely to obtain visas.

29. There is an urgent need to inform the public about the federal government activity that is the subject of Shorelight's DOS FOIA request. In fact, Shorelight is aware that members of the media, including the McClatchy Company, have also requested this data.

30. Shorelight gathers information, exercises editorial discretion in selecting and organizing documents, and distributes the resulting work to members of Congress, members of the media, and universities throughout the United States. Media outlets regularly publish information Shorelight provides.

31. The data that Shorelight seeks through the FOIA request is directly related to the integrity and viability of the student visa process—an issue which has been a primary focus of news coverage for the past weeks and months.

32. The subject of Shorelight's FOIA request also raises questions about the government's integrity that affect public confidence. The Government often responds to media

requests regarding reductions in issuances of student visas by citing reasons other than an increased refusal rate. This data is essential to uncovering whether an increased refusal rate is the main reason for reductions in the numbers of student visa issuances in certain countries.

*State Department Response*

33. On September 12, 2018, DOS sent Plaintiff a letter denying its request for expedited processing. *See* Exhibit B, DOS Expedited Processing Denial Email.

34. In its denial, DOS stated conclusorily and without elaboration that "we are denying your request for expedited processing and have placed your request in the complex category." DOS gave no further reasoning for the denial. DOS did not cite any statutory or regulatory requirements that Shorelight allegedly failed to satisfy. DOS also did not explain why providing this data would be complex, given that all that is necessary would be for DOS to provide the data it already has and uses to compile its annual report, and gives to its consular officials, but does not report to the public.

35. As of the date of this Complaint, Defendant DOS has failed to notify Shorelight whether DOS will comply with the FOIA request, *see* 5 U.S.C. § 552(a)(6)(A)(i), or to produce all requested data or demonstrate that they are lawfully exempt from production. *See id.* § 552(a)(6)(C). Nor has DOS notified Shorelight of the scope of any responsive data DOS intends to produce or withhold and the reasons for any withholdings, or informed Shorelight that it may appeal any adequately specific, adverse determination.

*Shorelight's Appeal of Denial of Expedited Processing*

36. On September 18, 2018, Shorelight appealed DOS's denial of its request for expedited processing. *See* Exhibit C, Expedited Processing Appeal Letter.

37. In its appeal, Shorelight further elaborated on the reasons that it is entitled to expedited processing, including: (i) describing Shorelight's proven track record of disseminating

information to Congress and the media for the purpose of informing the public about the government operations and activities regarding student visas; and (ii) explaining the critical due process urgency to better understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest-in and recruit from around the world.

38. DOS has not responded to Shorelight's appeal, in violation of FOIA. *See* 5 U.S.C. § 552(a)(6)(E)(ii) and 22 C.F.R. § 171.11(f)(4), which states that "[a] decision in writing on the appeal will be issued within 10 calendar days of the receipt of the appeal."

*Exhaustion of Administrative Remedies*

39. Through DOS's denial of Shorelight's request for expedited processing, and its failure to respond in any way to Shorelight's appeal of the denial of expedited processing, Shorelight has constructively exhausted its administrative remedies and seeks immediate judicial review. *See* 5 U.S.C. § 552(a)(6)(E)(iii).

40. Because Defendant has "fail[ed] to comply with the applicable time limit provision" of the FOIA, even with the benefit of any extensions of time which DOS might have claimed, Shorelight is "deemed to have exhausted [its] administrative remedies." *See id.* § 552(a)(6)(C)(i); 22 C.F.R. § 171.11(f)(4).

## COUNT I

## Violation of FOIA, 5 U.S.C. § 552

## Wrongful Denial of Expedited Processing of DOS FOIA Request

41. Shorelight repeats the allegations in the forgoing paragraphs and incorporates them as if fully set forth herein.

42. Shorelight properly requested records within the possession, custody, and control of DOS on an expedited basis.

43. DOS is an agency subject to FOIA and must process FOIA requests on an expedited basis pursuant to the requirements of 5 U.S.C. § 552(a)(6)(E) and 22 C.F.R. § 171.11(f)(2) and (3).

44. Shorelight has, as a core mission of its business, a practice of disseminating information to the public, the Congress, the media, universities, and students regarding the student visa process. There is an urgent need to inform the public about the federal government activity that is the subject of Shorelight's DOS FOIA request, such that expedited processing is appropriate under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 22 C.F.R. § 171.11(f)(2) and (3).

45. Shorelight also has a substantial due process interest in obtaining this data because it and its associated universities need to understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest-in and recruit from around the world. This data is critical to preventing public schools funded by taxpayer dollars from wasting millions of dollars to recruit students from areas where they are unlikely to obtain visas. 22 C.F.R. § 171.11(f)(2) and (3).

46. DOS's failure to grant expedited processing violates FOIA and DOS regulations. *See* 22 C.F.R. § 171.11(f)(2) and (3).

47. Plaintiff Shorelight is therefore entitled to injunctive relief requiring DOS to grant expedited processing of Shorelight's DOS FOIA request.

48. The records sought by Shorelight's DOS FOIA request relate to a matter of widespread and exceptional media interest in which there exit possible questions concerning the government's integrity and due process that affect public confidence, such that expedited processing is appropriate under and 22 C.F.R. § 171.11(f)(2) and (3).

49. DOS's failure to grant expedited processing under 22 C.F.R. § 171.11(f)(2) and

(3) violates FOIA and DOS regulations.

50. Plaintiff Shorelight is therefore entitled to injunctive relief requiring DOS to grant expedited processing of Shorelight's DOS FOIA request.

## COUNT II

### Violation of FOIA, 5 U.S.C. § 552

### DOS's Failure to Respond to Request Within 20 Days

51. Plaintiff repeats and incorporates by reference the foregoing paragraphs as if fully set forth herein.

52. By failing to respond to Plaintiff's request within the statutorily mandated time period, Defendant DOS has violated its duties under FOIA, *see* 5 U.S.C. § 552 *et seq.*, and 22 C.F.R. § 171.11(f)(4), including but not limited to its duties to conduct a reasonable search for responsive records, to take reasonable steps to release all reasonably segregable nonexempt information, and to not withhold responsive records.

53. Plaintiff is being irreparably harmed by DOS's violation of the FOIA, and Plaintiff will continue to be irreparably harmed unless DOS is compelled to comply with the FOIA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court:

(1) order Defendant to expedite the processing of Shorelight's FOIA request submitted on August 28, 2018;

(2) order Defendant to conduct a search for any and all responsive records to Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to discovery of records responsive to Plaintiff's FOIA

request;

(3) order Defendant to produce, by a date certain, any and all nonexempt records responsive to Plaintiff's FOIA request and a Vaughn index of any responsive records withheld under a claim of exemption;

(4) enjoin Defendant from continuing to withhold any and all nonexempt records responsive to Plaintiff's FOIA request;

(5) award Plaintiff attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) grant Plaintiff such other relief as the Court deems just and proper.

Dated: February 1, 2019

Respectfully submitted,

/s/ David L. Haller
David L. Haller (DC Bar No. 1026467)
Leon Fresco (DC Bar No. 1044685)
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20006
Telephone: (202) 955-3000
Fax: (202) 955-5564
Email: David.Haller@hklaw.com
Email: Leon.Fresco@hklaw.com

*Counsel for Plaintiff Shorelight Education, LLC*